IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHRIST KINGDOM BUILDING WORSHIP CENTER and ELLEN WALLACE-SEARCY,<br><br>Plaintiffs,<br><br>v.<br><br>LBC2 REO LLC *et al.*,<br><br>Defendants. | 1:23CV471 |

**MEMORANDUM OPINION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**

This case is now before the Court on the defendants' joint motion to compel discovery, Docket Entry 103, and joint motion for attorneys' fees, Docket Entry 101. The Court grants the motion to compel with respect to the June 29, 2022 email only. The Court denies the motion for attorneys' fees for failure to follow Local Rule 37.1(a)'s procedural requirements.

I. MOTION FOR ATTORNEY'S FEES

The defendants have moved for sanctions under Federal Rule of Civil Procedure 26(g)(3). Docket Entry 101. This rule requires a Court to sanction an attorney who improperly certifies that a discovery disclosure is complete and correct. *See* Fed. R. Civ. P. 26(g).

But under Local Rule 37.1(a), this Court

> will not consider motions and objections relating to discovery unless moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord. The certificate shall set forth the date of the conference, the names of the participating attorneys, and the specific results achieved.

The plaintiffs argue that the defendants' motion is improper because they filed no such certificate. They are correct.

The language of the local rule is broad: it applies to all "motions . . . relating to discovery." LR 37.1(a). At least one other court with a similar local rule has found it to encompass a motion for Rule 26(g) sanctions. *See Rich v. Witt O'Brien's, USVI, LLC*, No.

1:19-CV-00022-RAM-EAH, 2024 WL 1810528, at *8 (D.V.I. Apr. 25, 2024) (analyzing a local rule's requirement that parties meet and confer "[p]rior to filing any motion relating to discovery pursuant to Federal Rules of Civil Procedure 26-37").

And the requirement makes sense. The defendants' motion involves a discovery dispute. The defendants should certify that they attempted to resolve the dispute informally before resorting to sanctions, just as they would for a motion to compel. This is particularly important for motions like the present one that were not proceeded by a motion to compel, and as a result represent the first time a party has brought the discovery dispute to the Court.

The defendants argue that the local rule applies only to motions made under the corollary Federal Rule of Civil Procedure 37. If that were the case, the rule would say so. Instead, it states that it applies to all "motions . . . relating to discovery," LR 37.1(a), which includes motions under Rule 26.

The defendants also argue that the plaintiffs have not consistently applied Local Rule 37.1 to the motion. In addition to a meet and confer requirement, Local Rule 37.1 also shortens the response shortened deadline for "discovery-related motion[s]." *See* LR 37.1(c). The plaintiffs instead assumed that the deadline for non-discovery-related motions applied when they moved for an extension. *See* Docket Entry 107 at 1–2. But the plaintiffs' previous motions do not control the scope of the local rule.

Finally, the defendants argue that they did confer with the plaintiffs regarding their discovery violations and made a showing of doing so through the motion's briefing. *See* Docket Entry 123 at 3. But the briefing the defendants cite is insufficient to replace a formal certificate that "set[s] forth the date of the conference, the names of the participating attorneys, and the specific results achieved." LR 37.1(a). For example, one of the pages cited describes a dispute over the plaintiffs' complaint, not their production during discovery. *See* Docket Entry 123 at 3 (citing Docket Entry 102 at 4).

Indeed, this is indicative of a broader problem with the defendants' motion: it takes issue with many instances of the plaintiffs' behavior without clearly tying them all to specific attorney certifications on discovery disclosures, as is necessary for sanctions under Rule 26(g). For example, the defendants' initial brief alleges that that the plaintiffs never served the defendants' subpoenas on certain third parties. Docket Entry 102 at 11. Even if true, it is not clear how this would violate Rule 26. A Local Rule 37.1(a) certificate would have helped identify the specific certifications at issue by showing what discovery issues the parties discussed. Instead, the defendants ask the Court to sort through all the plaintiffs' allegedly undesirable conduct and determine which specific

instances are tied to improper certifications. This is the very problem the local rule addresses. Accordingly, the Court denies the defendants' motion for attorney's fees, Docket Entry 101.

## II. MOTION TO COMPEL

After the close of discovery, the defendants move to compel production of multiple pieces of evidence. The parties agree that the information the defendants seek would typically be protected by attorney-client privilege, but the defendants argue that the plaintiffs have waived that privilege.

First, the defendants argue that Wallace-Searcy put her communications with her attorney, Dawnielle Grace, at issue, which therefore compels production of a June 24, 2022 email from Wallace-Searcy to Grace as well as additional deposition testimony from Wallace-Searcy on her communications with Grace. Second, the defendants argue that the plaintiffs waived privilege over a June 29, 2022[1] email from Grace to Wallace-Searcy that the plaintiffs already produced. Finally, the defendants maintain that the waiver of privilege for the June 29 email was also a waiver as to the email's subject matter, which would provide an alternative basis for production of the June 24 email and additional deposition testimony.

### A. Standard of Review

Federal Rule of Civil Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

[1] The defendants alternate between referring to this email as having been sent on June 29 and July 29, 2022. Based on the record, the Court understands the June date to be the correct one. *See* Docket Entry 104-8 at 2; Docket Entry 108 at 11.

Generally, the party "resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (collecting cases); *accord Carlton & Harris Chiropractic Inc. v. PDR Network, LLC*, No. 3:15-CV-14887, 2024 WL 1451124, at *2 (S.D.W. Va. Apr. 3, 2024). This remains true even when the party resists discovery on the basis of attorney-client privilege. *In re Grand Jury Proc.*, 33 F.3d 342, 353 (4th Cir. 1994); *Heider v. Carr*, No. 3:21-CV-387-RJC-DCK, 2023 WL 6217751, at *3 (W.D.N.C. Sept. 25, 2023).

B. The Motion Was Timely

This district, unlike many others, has no local rule setting a deadline for motions to compel discovery. But typically, "a party must file a motion to compel before the close of discovery," and the Court will consider a later-filed motion "if the movant offers an acceptable explanation for the motion's tardiness." *Glaston Corp. v. Salem Fabrication Techs. Grp., Inc.*, No. 1:21CV942, 2024 WL 3161621, at *7 (M.D.N.C. June 25, 2024).

Here, the defendants did not know that the plaintiffs would be claiming privilege over the June 29 email until after the close of discovery. *See* Text Order dated 09/16/2025; Docket Entry 104-8 at 2. And with respect to the June 24 email, the defendants did not know of its existence until less than a month before discovery closed, and before mediation occurred. *See* Docket Entry 109 at 3. But when—on the final day of discovery—mediation proved unsuccessful, defendants immediately asked the plaintiffs whether they still claimed privilege over the email. Docket Entry 104-8 at 5–6. The parties discussed the issue over the next few days, and the plaintiffs indicated they might reevaluate their position, only to ultimately stand firm. *Id.* at 2–5.

These facts constitute an acceptable explanation for the motion's tardiness. The motion is therefore timely.

C. The Defendants Substantially Complied with Local Rule 37.1(a)

The defendants again failed to submit a Local Rule 37.1(a) certificate with their motion to compel. Docket Entry 108 at 3 n.1. However, the plaintiffs do not argue that the motion should be dismissed on this basis. *See id.* And unlike for the motion for attorneys' fees, the defendants provided complete documentation of their communications with the plaintiffs regarding the production at issue in this motion and certified that documentation's veracity. *See* Docket Entry 109 at 4 n.1. The Court will therefore not deny the defendants' motion under Local Rule 37.1(a).

D. Whether Wallace-Searcy's Communications with Grace Are at Issue Is Moot

The defendants argue that the June 24 email and additional testimony are relevant to whether the defendants showing up to take possession of the church premises genuinely surprised Wallace-Searcy. They argue that "surprise is central to Pastor Wallace-Searcy's NIED claim and her alleged emotional damages" and "is also central to Moving the defendants' contributory negligence defense." Docket Entry 104 at 10; *see also* Docket Entry 109 at 5–6.

But the NIED claim does not survive summary judgment. The defendants' arguments are therefore moot.

E. The Plaintiffs Waived Privilege for the June 29 Email

As a preliminary note, it is possible that the June 29 email is also irrelevant to the remaining claims. However, no party has provided enough information about the email's contents, or how it will be used, for the Court to so find. The issue, then, is waiver.

Federal Rule of Evidence 502 applies to issues of waiver through inadvertent disclosure even if the underlying claim is one of state law. *See* Fed. R. Evid. 502(f). The rule provides a disclosure will not constitute a waiver of privilege so long as the following three elements are met:

(1) The disclosure is inadvertent;

(2) The holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3) The holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B).

The advisory notes indicate that many courts have used a multifactor test to determine whether privilege was waived. While the "rule does not explicitly codify that test," the "rule is flexible enough to accommodate any of those . . . factors." Fed. R. Evid. 502 (initial explanatory note).

The parties therefore apply a multifactor balancing test provided by *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 257 (D. Md. 2008), which predates Rule 502 but continued to be cited following the rule's adoption. This Court adopted the same test in *In re Grand Jury Investigation*, 142 F.R.D. 276, 278 (M.D.N.C. 1992). The test considers:

(1) "The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document productions;"

(2) The "number of inadvertent disclosures;"

(3) The "extent of the disclosure;"

(4) Any "delay and measures taken to rectify the disclosure;" and

(5) Whether "the overriding interests of justice would or would not be served by relieving a party of its error."

*In re Grand Jury Investigation*, 142 F.R.D. at 278–79.

1. The plaintiffs took no precautions to prevent disclosure.

Here, the plaintiffs have not alleged that they took any specific precautions to avoid inadvertent production of privileged documents. *See* Docket Entry 108 at 12–13. Admittedly, their total document production in this case was limited—including only 18 documents total, Docket Entry 104 at 10 n.5—and such limited production may not demand as stringent precautions as cases involving thousands of documents. Still, this complete absence of precautions does not weigh in the plaintiffs' favor.

2. The ratio of inadvertent disclosures to documents produced was high.

Although an independent factor from the first, the second factor "has its greatest probative value in determining the reasonableness of the precautions taken during the document production." *In re Grand Jury Investigation*, 142 F.R.D. at 280. Thus, this Court has looked at whether a party produced not just a low number, but a low ratio, of privileged documents to documents reviewed. *Id.* at 280–81 (finding no waiver where a party produced 18 privileged documents out of 22,000 pages produced and 300,000 pages reviewed).

Here, the plaintiffs do not provide the number of pages they reviewed, but do not contest the defendants' assertion that they produced only 18 documents in total, Docket Entry 104 at 10 n.5, though they characterize this production as comprising "dozens of pages," Docket Entry 108 at 12. One privileged document produced out of a set of eighteen—comprising only dozens of pages—is too high a ratio to demonstrate any diligence. This factor therefore weighs against the plaintiffs.

3. The extent of disclosure is low.

The third factor concerns whether "any meaningful confidentiality can be restored." *In re Grand Jury Investigation*, 142 F.R.D. at 281. For example, had the June 29 email already been shown to a jury, this factor would weigh against the plaintiffs. *See id.* That is not the case. The case has not progressed beyond summary judgment and the defendants have sequestered the email. Docket Entry 104 at 4. This factor therefore weighs in the plaintiffs' favor.

4. Neither party immediately notified the other of the disclosure.

"Under the fourth factor, the court is called upon to examine whether the disclosing party took immediate measures to remedy the inadvertent disclosure before its adversary significantly relied upon the privileged material to develop its case." *In re Grand Jury Investigation*, 142 F.R.D. at 281–82.

Here, the plaintiffs apparently did not realize one of the few documents they had produced was the June 29 email until—after the close of discovery, and well into the summary judgment briefing period—the defendants mentioned it when requesting the June 24 email. *See* Docket Entry 104-8. The plaintiffs therefore did not take immediate measures to remedy the disclosure.

Still, the defendants are not faultless. Rule 4.4(b) of the North Carolina Rules of Professional Conduct requires that a "lawyer who receives a writing relating to the representation of the lawyer's client and knows or reasonably should know that the writing was inadvertently sent shall promptly notify the sender." The defendants argue that they did not do this because—given how few documents the plaintiffs produced in total—they reasonably assumed the plaintiffs intentionally produced the June 29 email. Docket Entry 109 at 8. Without making any finding as to the defendants' professional obligations, the Court notes that the better practice would have been for the defendants to confirm that the production was intentional. The fourth factor is therefore neutral.

5. The Interests of Justice Do Not Weigh in Either Party's Favor.

While the fifth factor remains a "broad-brush test," courts have most often looked at whether a party has relied on the privileged information in making its arguments. *In re Grand Jury Investigation*, 142 F.R.D. at 282 (collecting cases). This factor weighs in no party's favor. The plaintiffs argue that the defendants' failure to timely notify them of the inadvertent disclosure would make waiver unjust. Docket Entry 108 at 14. But given how few documents the plaintiffs produced, it is plausible that the defendants believed the disclosure was intentional. The fifth factor is therefore neutral.

In sum, the multifactor test weighs against the plaintiffs. The last two factors are neutral, while the first two weigh against the plaintiffs, and only the third weighs in their favor. Of particular significance is the first factor regarding precautions, which Rule 502(b)(2) has converted into an essential element of nonwaiver. The plaintiffs therefore waived their claim of privilege over the June 29 email.

F. The Plaintiffs Have Not Waived Privilege on the Subject Matter of the June 29 Email.

Waiver "extends to an undisclosed communication . . . only if:"

(1) The waiver is intentional;

(2) The disclosed and undisclosed communications or information concern the same subject matter; and

(3) They ought in fairness to be considered together.

Fed. R. Evid. 502(a). "Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." *Id.* (initial explanatory note).

Here, there is some evidence that the disclosure of the June 29 email was intentional. The email was one of only 18 documents the plaintiffs produced, Docket Entry 104 at 10 n.5, and they claimed privilege over it only after it became clear that the defendants were using it as a basis to seek other privileged information, *see* Docket Entry 104-8 at 2. Still, there is no direct evidence of intentionality, and mistakes happen—even unlikely ones. The plaintiffs have not waived their privilege with respect to the subject matter of the June 29 email.

The defendants also argue that the plaintiffs waived privilege over any additional communications between Wallace-Searcy and her attorney because Wallace-Searcy said that no such conversations occurred. They cite to cases that found that where a party testified under oath that they had not communicated with an attorney, the party waived privilege over such communications. *See Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998); *United States v. Pinho*, No. CRIM. 02-814, 2003 WL 25772423, at *4 (E.D. Pa. July 8, 2003).

But that has not happened here. Wallace-Searcy testified repeatedly that she had communicated with Grace during the month of June and refused to say more on attorney-client privilege grounds. Wallace-Searcy Dep. 35:10–25, 36:1–12, 45:19–25, 46:8–22, 47:1–25, 48:1–2, 86:15–25, 87:1–24, 97:3–25. And while these statements might appear to be in tension with statements made during the June 30 removal, *see* Body Camera Tr. 26:11–18 (telling Hrebenar that she had not spoken to her attorney since learning of the foreclosure), those statements are still not denials of all communication, and also were not made under oath. The plaintiffs therefore did not waive privilege under *Hawkins*.

III. CONCLUSION

**IT IS ORDERED** that the defendants' motion to compel, Docket Entry 103, is **GRANTED IN PART AND DENIED IN PART**. The plaintiffs waived privilege as to the June 29 email, but not as to its subject matter, and the defendants' arguments regarding whether the plaintiffs put additional communications at issue are moot.

**IT IS FURTHER ORDERED** that the defendants' motion for attorney's fees, Docket Entry 101, is **DENIED.**

JoAnna Gibson McFadden
United States Magistrate Judge

September 30, 2026